IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK G. ZBUKA, SR., | ) | CASE NO.  5:08-cv-1505 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| v. | ) | |
| | ) | |
| MARATHON ASHLAND PETROLEUM | ) | |
| LLC, et al., | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendants. | ) | DOC. NOS. 8, 11 |
| | ) | |

This case is before the magistrate judge on consent of the parties. Before the court is the motion of defendant United Steelworkers Union Local 1-450 ("the union"), to dismiss the complaint of plaintiff, Patrick G. Zbuka, Sr. ("Zbuka"), pursuant to Fed. R. Civ. P. 12(b)(6) ("R. 12(b)(6)"). Doc. No. 8. Also before the court is the motion of defendant Marathon Ashland Petroleum, LLC ("Marathon") to dismiss Zbuka's complaint pursuant to R. 12(b)(6). Doc. No. 11. Zbuka opposes both motions. Doc. No. 17. For the reasons given below, defendants' motions are granted and Zbuka's complaint is dismissed with prejudice.

I.

Zbuka alleges the following facts in his complaint. Zbuka worked for Marathon for

about 25 years. The union was his collective bargaining unit and labor relations representative during his final years at Marathon.

Marathon accused Zbuka of contaminating gasoline being loaded into a tanker-trailer at a refinery pump by inadvertently mixing one grade of fuel with another. Zbuka does not deny this allegation, but he contends that he was not properly trained or supervised to perform such a job. According to Zbuka, Marathon gave him the option of resigning and accepting early retirement or being terminated. Marathon also told him, Zbuka alleges, that if he did not resign he would lose certain important pension benefits. He also alleges that a union representative talked him into resigning even though the representative later admitted that he didn't understand the issues in the case.

Zbuka resigned on June 8, 2004. He later regretted his resignation and made the following allegations in his complaint:

> 9. The representation regarding the Plaintiff's pension benefits was communicated by way of omission when the Defendant Marathon's management did not clarify the status of the Plaintiff's pension rights when the need was apparent and while it was holding itself out as having ERISA fiduciary level knowledge about such matters, and [Plaintiff] was weighing his options to either accept a termination and initiate a union collective bargaining agreement grievance, or waive his rights to contest the termination and retire early with a loss in pension benefits, and while in the presence of Defendant Marathon's Human Resources managers.
>
> 10. The Plaintiff then resigned under duress and fear of losing pension benefits and later when he tried to withdraw his resignation with a clear mind before it was formally accepted by Defendant; he was refused and told his employment was terminated.
>
> 11. The discussion had with Defendant Marathon's [sic] as to whether the Plaintiff should resign or be terminated was in the additional context of whether or not he could pursue a grievance and contest the discipline leading to his termination. Defendant Marathon's using Plaintiff's pension benefits as a "carrot and stick" to get Plaintiff to retire and abandon his grievance rights, and then not to clarify his rights under facts where such a clarification was required by the employer was a violation of ERISA Section 510 as it relates to interference with a pension.

>       12.     The Plaintiff litigated an ERISA Section 510 claim against Defendant Marathon addressing this issue but that case was dismissed after appeal of an adverse US District Court decision on June 25, 2007 which treated his claim as not falling under ERISA but under the laws pertaining to collective bargaining agreement grievances. A subsequent cert petition to the US Supreme Court was recently denied.
>
>       13.     During the Section 510 litigation, Defendant Marathon represented to the Court of Appeals and District Court that the Plaintiff was entitled to grieve his termination at any time in spite of the fact it is claimed he voluntarily resigned and was retired. The issue of breach of the collective bargaining agreement was not litigated in the ERISA Section 510 claim as it was not ripe for litigation.

Complaint, Doc. No. 1, pp. 2-3 (punctuation in the original). Zbuka asserts that when he changed his mind about retiring, he informed a member of the union's grievance committee, Henry Ash ("Ash"), that he wanted to withdraw his resignation and Ash failed to relay this information to Marathon.

Zbuka alleges that during the litigation of his § 510 claim, Marathon's counsel and corporate representative prepared Ash for his deposition even though Ash had a duty to protect Zbuka's rights. Zbuka also alleges that counsel for Marathon told Zbuka that she represented Ash so that Zbuka would not have access to him outside the deposition. Ash also refused to provide an affidavit for Zbuka to help Zbuka oppose a motion for summary judgment.

On December 7, 2007, Zbuka filed a grievance with the union, claiming that he had been wrongly discharged on June 8, 2004. In a meeting on April 10, 2008, the union told him that as he was retired, the union was under no obligation to proceed with his grievance.

Zbuka filed this action on June 20, 2008. He alleges that Marathon breached the collective bargaining agreement by constructively terminating him and that the union breached its duty of fair representation by failing to represent him properly. He asserts

these claims pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("§ 301").

## II.

In deciding a motion to dismiss pursuant to R. 12(b)(6), the court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Gausmann v. City of Ashland,* 926 F. Supp. 635, 638 (N.D. Ohio 1996) (citations omitted). A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) ("more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements") (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 at 596 (1969)). The complaint must be dismissed if it fails to allege or infer facts consistent with all material elements necessary to sustain recovery. *Bell Atlantic Corp. V. Twombly*, ___ U.S. ___, ___, 127 S.Ct. 1955, 1968-69 (2007).

While the complaint must give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests, it need not set down in detail all the particularities of the claim. *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994); *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir. 1993). However, "when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *Scheid*, 859 F.2d at 436 (quoting *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976), *cert. denied*, 431 U.S. 914 (1977)).

In adjudicating a motion to dismiss pursuant to R. 12(b)(6), a court may only look at the pleadings themselves and documents that are part of the pleadings. *Haeberle v.*

*University of Louisville*, 90 Fed. Appx. 895, 897 n.1 (6th Cir. 2004); Fed. R. Civ. P. 12(c) ("R. 12(c)"). Documents that are part of the pleadings may be produced by either a plaintiff or a defendant in litigating a motion to dismiss pursuant to R. 12(b)(6). *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). A document is part of the pleadings if it is referred to by the complaint and is central to a plaintiff's claim. *Id.*

### III.

Zbuka asserts that Marathon breached the collective bargaining agreement by constructively terminating him and that the union breached its duty of fair representation by failing to represent him properly. Defendants deny both assertions, and they also reply that Zbuka's claims are barred by the statute of limitations and by *res judicata.*

*A.    Hybrid § 301 suits*

Employees who believe that they have been dismissed in violation of a collective bargaining agreement may bring a suit in federal court pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("§ 301"). *Hines v. Anchor Motor Freight*, 424 U.S. 554, 562 (1976). Before bringing such a suit, however, the employee must exhaust the grievance procedures established pursuant to the collective bargaining agreement. *Id.* at 563; *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965). In addition, an employee must file a hybrid § 301 action within six months of the resolution of the grievance process for the action to be timely. *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 169-71 (1983).

Generally, courts "should not undertake to review the merits of arbitration awards but should defer to the tribunal chosen by the parties finally to settle their disputes." *Hines*, 424 U.S. at 563. An exception exists, however, when "the union refuses to press or only

-5-

perfunctorily presses the individual's claim . . . ." *Id.* (quoting *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965)). "[A] union may not ignore a meritorious grievance or process it in a perfunctory fashion." *Vaca v. Sipes,* 386 U.S. 171, 191 (1967). In such a case, the employee may bring a suit pursuant to § 301 alleging dismissal by the employer in violation of the collective bargaining agreement and a breach by the union of its duty of fair representation in failing to prosecute the employee's claims properly. *Hines*, 424 U.S. at 563-65. The employee must prove both allegations for this action to succeed:

> In this hybrid suit under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to recover against *either* the Company or the Union, [plaintiff] must show that the Company breached the Agreement *and* that the Union breached its duty of fair representation. Unless [plaintiff] demonstrates *both* violations, he cannot succeed against either party.

*White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559-60 (6th Cir. 1990) (quoting *Bagsby v. Lewis Bros. Inc. of Tennessee,* 820 F.2d 799, 801 (6th Cir. 1987) (emphasis in the original; citation omitted).

Plaintiff's burden in undertaking a hybrid § 301 suit is heavy. The standard for demonstrating a breach by the union of its duty of fair representation is high: "A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents . . . ." *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953); *see also Hines*, 424 U.S. at 563-64. In addition to meeting this high standard in demonstrating that a breach occurred, the employee must show that any breach by the union affected the outcome of the arbitration:

> Even in the event of a union's breach of its duty of fair representation, an arbitration award is not quickly set aside. . . . [T]o vacate an arbitration award on this ground, there must be two findings. First, the Union must have breached its duty of fair representation to the employee. Second, the breach of duty by the Union must have tainted the arbitrator's decision. The breach must have contributed to the arbitrator's

-6-

>   making an erroneous decision.

*Wood v. International Bhd. of Teamsters, Chauffers, Warehousemen and helpers of Am., Local 406*, 807 F.2d 493, 500 (6th Cir. 1986). "[T]he Union is liable for damages only if its breach was a 'but-for' cause of those damages." *Id.* at 502.

*B.     Zbuka's suit and the statute of limitations*

Marathon and the union contend that Zbuka's hybrid § 301 suit is barred by the statute of limitations. Zbuka denies this contention.

The six-month statute of limitations begins to run "when an employee discovers, or should have discovered with exercise of due diligence, acts giving rise to the cause of action." *Wilson v. International Bhd. of Teamsters,* 83 F.3d 747, 757 (6th Cir.1996). Because a hybrid § 301 suit is brought against both the employer and the union, a hybrid § 301 cause of action accrues when the employee discovers or should have discovered (1) a dismissal by the employer in violation of the collective bargaining agreement and (2) a breach by the union of its duty of fair representation in failing to prosecute the employee's claims properly. Only when an employee discovers or should have discovered *both* occurrences does the statutory period begin to run.

Zbuka is not clear as to whether in 2004 he asked the union to represent him and it refused:

>   Union member Henry Ash did not properly represent the Plaintiff in his forced retirement on June 8, 2004 as discussed in the pleadings, but Ash's conduct could have been cured by the Defendant Union leadership processing the Plaintiff's grievance, which it did not, and pursuing the same under the theory that the Plaintiff's forced resignation was a constructive discharge, which again it did not.

Opposition brief, p. 6. Zbuka's precise argument and its relevance are somewhat obscure. He seems to be asserting that the union failed to represent him properly on June 8, 2004

and then refused to process a grievance that he initiated by speaking to Ash within a few days of his forced resignation.

There are several problems with these assertions. Primarily, Zbuka does not allege that he took any appropriate action to initiate the grievance process. Section 5, ¶ 3.22 of the collective bargaining agreement between Marathon and the union at the time of Zbuka's retirement provided in relevant part as follows:

> For the purpose of adjusting any grievance and dispute that may arise, it is agreed that the following procedure shall govern.
>
> a) The employee or the employee and a representative of the Union shall first orally seek adjustment with his immediate foreman within 10 work days, who shall give an answer within 48 hours, Saturday, Sunday and holidays excluded.
>
> b) if no immediate answer is given, or if the answer is unsatisfactory, the employee and/or his committeeman may, within 10 working days file a written grievance with the foreman, who shall make a written reply within 5 days, Saturdays, Sundays and holidays excluded. If this reply is not satisfactory, the grievance may then be submitted to the Employees' Committee.
>
> c) The Employees' Committee <u>and/or a representative of the International Union</u> shall have 45 work days from the end of the above 5-day period to take grievances up in writing and/or discuss it with the Plant Superintendent or his representative . . . .
>
> d) In the event the grievance or dispute is not satisfactorily settled under Step (c) <u>above the Union may within 45 work days of receipt of the Company's answer under Step (c) above submit the matter to arbitration</u> . . . .

Agreement between Marathon Petroleum Co. LLC and United Steelworkers International Union on Behalf of Local 1-450, Canton, Ohio, Marathon's motion, Exh A, p. 8 (emphasis and punctuation in the original).[1] Speaking to a union representative does not initiate the

---

[1] As the collective bargaining agreement is referenced in Zbuka's complaint and is at the heart of his allegations, Marathon is entitled to introduce the document on a R. 12(b)(6) motion. *See* R. 12(c).

grievance process; speaking to the company foreman does. Further, the *employee*, with or without a union representative, must speak to the foreman. That Ash did not speak to the foreman is irrelevant. All that matters is that *Zbuka* did not speak to the foreman to initiate a grievance.

If Zbuka is arguing that he attempted to grieve his forced retirement in June 2004 and the union refused to represent him properly, then the statutory period began to run in sometime in June 2004 and expired sometime in December 2004. In that case, Zbuka's hybrid § 301 suit is barred by the statute of limitations. If Zbuka is not arguing that the union refused to represent him in June 2004, then no cause of action against the union accrued at that time, and the statute of limitations was never triggered. In that case, Zbuka failed timely to exhaust his administrative remedies by not seeking an adjustment orally with his foreman within ten work days or filing a written grievance with the foreman within ten days of the response to his oral complaint, as required by § 5, ¶ 3.22(a) and (b) of the collective bargaining agreement. Thus, either the statute of limitations or a failure to exhaust administrative remedies bars Zbuka's complaint.[2]

Zbuka claims that his cause of action did not accrue until the union refused on April 10, 2008 to represent him in a grievance against Marathon. Because he filed his suit on June 20, 2008, Zbuka asserts, he initiated his civil action well within the six-month statutory period for filing a timely civil action.

Zbuka errs. Zbuka's attempt to initiate a grievance in 2008 was a nullity because

---

[2] The court reads Zbuka's complaint as alleging that he did not attempt to initiate a grievance until 2008. Zbuka is barred from initiating a grievance at any time in the future, therefore, by the 10-day deadline set forth in the collective bargaining agreement for initiating a grievance.

it was untimely and because, as the union pointed out to Zbuka when he attempted to file a belated grievance, it had no duty to represent Zbuka, who at that time was a retiree. Unions have no obligation to represent retirees in negotiations with an employer absent some provision in the collective bargaining agreement establishing such an obligation. *Allied Chem. & Alkali Workers, Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 181 n.20 (1971). Zbuka cites no such provision of the collective bargaining agreement establishing a duty on the part of the union to represent retirees. *See Zbuka v. Marathon Ashland Petroleum, LLC*, 447 F. Supp. 2d 845, 851 (N.D. Ohio 2006) ("Zbuka's retirement affected his ability to grieve under the CBA: only members of the collective bargaining unit can file a grievance under the CBA; retirees are not members of the unit. ").[3]

Zbuka failed to file a timely grievance in 2004 as required by § 5, ¶ 3.22 of the collective bargaining agreement and had no standing to file a grievance four years later. Consequently, Zbuka has no claim against the union. Because a hybrid § 301 suit requires a plaintiff to succeed against both the company and the union, Zbuka has no claim against Marathon, either. For these reasons, Zbuka's complaint fails to allege or infer facts consistent with all material elements necessary to sustain recovery and must be dismissed.

IV.

For the reasons given above, the motions of Marathon and the union to dismiss

---

[3] Zbuka attempts to avoid this difficulty by asserting that he was "constructively discharged" and thus eligible as a discharged employee to apply for a hearing in the presence of the Employees' Committee to grieve his discharge pursuant to § 5, ¶ 3.26 of the collective bargaining agreement. Zbuka cites no law and no portion of the collective bargaining agreement to support his argument that a decision to retire, even under duress, can be an alleged "constructive discharge" in litigation pursuant to § 301. In any event, this is a claim that should have been raised in 2004, not after Zbuka had been retired for more than three years and lacked standing to raise such a claim.

-10-

Zbuka's complaint with prejudice are granted.

**IT IS SO ORDERED.**


Dated:  October 22, 2008           /s/ Nancy A. Vecchiarelli
                                   Nancy A. Vecchiarelli
                                   United States Magistrate Judge

-11-